

# OFFICE OF THE FEDERAL PUBLIC DEFENDER
## DISTRICT OF MARYLAND
### NORTHERN DIVISION
TOWER II, 9th FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND 21201-2705
TEL: (410) 962-3962
FAX: (410) 962-0872
EMAIL: REBECCA_TALBOTT@FD.ORG

JAMES WYDA  
FEDERAL PUBLIC DEFENDER

REBECCA TALBOTT  
ASSISTANT FEDERAL PUBLIC DEFENDER

July 11, 2019

**VIA ECF**
The Honorable Ellen L. Hollander
United States District Court
101 West Lombard Street, Chambers 5B
Baltimore, Maryland 21201

    Re:   *United States v. Navon Mayo*
            Crim. No. 18-617-ELH

Dear Judge Hollander:

This Office represents Mr. Mayo in the above-referenced matter. Mr. Mayo has agreed to plead guilty to a one-count Indictment charging him with Hobbs Act Robbery, in violation of 18 U.S.C. § 1951. The parties have not entered into a plea agreement. The purpose of this letter is to memorialize the factual basis for the plea and to assist the Court in the Rule 11 colloquy.

## Offense of Conviction

1. Mr. Mayo agrees to pleads guilty to the one-count Indictment charging him with Hobbs Act Robbery, in violation of 18 U.S.C. § 1951. Mr. Mayo admits that he is, in fact, guilty of that offense and will so advise the Court.

## Elements of the Offense

2. The elements of the offense to which Mr. Mayo has agreed to plead guilty, and which the Government would prove if the case went to trial, are as follows:

That on or about the date alleged in the Indictment, in the District of Maryland

    a.    The Defendant obtained or took the property of another, or in the presence of another;

July 11, 2019
Page 2

    b.    The Defendant did so against the victim's will, by actual or threatened force, violence, or fear of injury, to person or property, whether immediately or in the future; and

    c.    As a result of the Defendant's actions, interstate commerce, or an item moving in interstate commerce, was delayed, obstructed or affected in any way or degree.

## Penalties

3. The maximum sentence provided by statute for the offense to which Mr. Mayo is pleading guilty is as follows: twenty (20) years imprisonment; $250,000 fine; and a period of supervised release of up to three (3) years. In addition, Mr. Mayo understands that he must pay a $100 special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. § 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. Mr. Mayo understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked—even on the last day of the term—and Mr. Mayo could be returned to custody to serve another period of incarceration and a new term of supervised release. Mr. Mayo understands that the Bureau of Prisons has sole discretion in designating the institution at which he will serve any term of imprisonment imposed.

## Waiver of Rights

4. Mr. Mayo understands that by pleading guilty, he surrenders certain rights as outlined below:

    a. If Mr. Mayo had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if Mr. Mayo, the Government, and the Court all agreed.

    b. If Mr. Mayo elected a jury trial, the jury would be composed of twelve individuals selected from the community. Undersigned counsel and Mr. Mayo would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before Mr. Mayo could be found guilty of any count. The Court would instruct the jury that Mr. Mayo was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If Mr. Mayo went to trial, the Government would have the burden of proving Mr. Mayo guilty beyond a reasonable doubt. Mr. Mayo would have the right to confront and cross-examine the Government's witnesses. Mr. Mayo would not have to present any defense witnesses

July 11, 2019
Page 3

or evidence whatsoever. If Mr. Mayo wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

      d. Mr. Mayo would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that it could not draw any adverse inference from his decision not to testify.

      e. If Mr. Mayo were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him.

      f. By pleading guilty, Mr. Mayo will be giving up all of these rights, except the right to appeal the sentence. By pleading guilty, Mr. Mayo understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements Mr. Mayo makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

      g. If the Court accepts Mr. Mayo's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

      h. By pleading guilty, Mr. Mayo will also be giving up certain valuable civil rights. He understands that there may be immigration consequences associated with this conviction and he has been counseled accordingly. Specifically, Mr. Mayo understands that he may be subject to deportation and removal from the United States. Mr. Mayo nevertheless affirms that he wants to plead guilty regardless of possible immigration consequences.

### Sentencing Guidelines Apply

5. Mr. Mayo understands that a sentencing guidelines range for this case (henceforth the "advisory guidelines range") will be determined by the Court pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. Mr. Mayo further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in determining a reasonable sentence.

### Factual Statement

6. Mr. Mayo agrees that if this case had proceeded to trial, the following facts would have been established beyond a reasonable doubt:

On October 10, 2018, at approximately 9:00 A.M., members of the Baltimore Police Department ("BPD") and the FBI responded to a call for a robbery of an armored carrier messenger employed by GardaWorld in the vicinity of Poplar Grocery LLC, 610 Poplar Grove

July 11, 2019
Page 4

Street, Baltimore Maryland 21216. The victim messenger told investigators he was loading an ATM in the vestibule of Poplar Grocery when an unidentified black male suspect entered the location, pointed an object that appeared to be a handgun at the messenger, and took from the messenger the GardaWorld money bag containing United States Currency. The messenger also stated that the suspect attempted but failed to take the messenger's firearm from the holster. The suspect then fled with the messenger's money bag containing approximately $16,000 in cash.

Surveillance footage from Poplar Grocery LLC captured the incident, and law enforcement investigators reviewed the video for identifying characteristics of the robbery suspect.

Through additional investigation, investigators developed Navon Mayo as a suspect. Prior police records indicated Navon Mayo had had prior contact with law enforcement in the nearby surrounding area of the Poplar Grocery LLC.

On October 30, 2018, Mr. Mayo, who was incarcerated in Carroll County subsequent to his arrest 15 days earlier, was transported in custody by the FBI for an interview. Without a lawyer present, Mr. Mayo agreed to waive his *Miranda* rights. During this custodial interview, Mr. Mayo was shown still frames from the surveillance video at Poplar Grocery LLC, which were zoomed in and cropped to show only the suspect, without the apparent weapon or money bag; Mr. Mayo acknowledged that the suspect in the still frames he was shown was him. Mr. Mayo was not shown the surveillance video itself. When asked in the interview what happened the day of the robbery, Mr. Mayo stated he was "pretty much like asleep," "in another state of mind," "high out of my mind," and it was "like a dream."

The robbery affected interstate commerce, as GardaWorld and Poplar Grocery LLC are both engaged in interstate commerce, and the robbery disrupted the flow of interstate business and/or otherwise required the purchase and transportation of additional interstate goods.

### Advisory Sentencing Guidelines Calculation

7. Mr. Mayo respectfully submits that the following analysis under the U.S. Sentencing Guidelines applies:

   a. The base offense level is 20, pursuant to U.S.S.G. § 2B3.1(a).

   b. The offense level is increased by 3 levels because a dangerous weapon, defined to include an object closely resembling a dangerous weapon, was brandished or possessed, pursuant to U.S.S.G. § 2B3.1(b)(2)(E). This produces an adjusted offense level of 23.

   c. Based on Mr. Mayo's prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct, Mr. Mayo should receive a 2-level reduction

        in the adjusted offense level under U.S.S.G. § 3E1.1(a). Moreover, Mr. Mayo expects that the U.S. Attorney's Office will make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease, in recognition of Mr. Mayo's timely notification of his intention to plead guilty, thereby permitting the government to avoid preparing for trial.

    d. Accordingly, the total offense level is 20.

8. Mr. Mayo takes the position that the Career Offender provision of U.S.S.G. § 4B1.1 does not apply in his case. Nonetheless, Mr. Mayo understands that his criminal history could affect his advisory guideline range.

### Sentence Within the Discretion of the Court

9. Mr. Mayo understands that under the current state of the law in the federal system, the sentence to be imposed is within the sole discretion of the Court. Mr. Mayo understands that the Court will determine the facts relevant to sentencing. Mr. Mayo understands that he has the right to have the Court order a pre-sentence investigation report. In determining the factual basis for the sentence, the Court will consider the stipulated statement of facts and any other relevant information. Mr. Mayo understands that the Court is under no obligation to accept any recommendation in regard to his sentence, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. Mr. Mayo understands that if the Court should impose any sentence up to the maximum established by statute, Mr. Mayo cannot, for that reason alone, withdraw his guilty plea, and will remain bound to his guilty plea. Mr. Mayo understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guideline range or sentence Mr. Mayo will receive. Mr. Mayo agrees that no one has made such a binding prediction or promise.

July 11, 2019
Page 6

    I, Navon Mayo, have carefully reviewed the contents of this letter with my attorney. I understand it. I voluntarily agree to it, and I do not wish to change any part of it. I am satisfied with the representation of my attorney.

7/11/19
Date

Navon Mayo
Defendant

    I have carefully reviewed the contents of this letter with Mr. Navon Mayo. He has advised me that he understands and willingly pleads guilty. To my knowledge, his decision is informed and voluntary.

7/11/19
Date

Rebecca Talbott
Assistant Federal Public Defender


cc:    Burden Walker, Assistant United States Attorney